# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALI SEGHROUCHNI**, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.                                                      Case No. 8:23-cv-2568-WFJ-AEP

**BASCOM'S STEAKHOUSE, INC.**, and
**FRED B. BULLARD, JR.**, individually,

      Defendants.

_____/

## ORDER

Before the Court is Ali Seghrouchni's ("Plaintiff") Motion to Conditionally Certify an FLSA[1] Collective Action and to Certify a Class Action Pursuant to Federal Rule of Civil Procedure 23(b)(3) (Dkt. 14). Bascom's Steakhouse, Inc. (the "Steakhouse") and Fred Bullard, Jr. (collectively, "Defendants") have responded in opposition, and Plaintiff has replied (Dkt. 17; Dkt. 20). On February 14, 2024, the Court held a hearing on this matter. Upon careful consideration, and with the benefit of able argument from both sides, the Court grants-in-part and denies-in-part Plaintiff's Motion. At this time, the Court conditionally certifies an FLSA collective action but declines to certify a class under Rule 23. Plaintiff may again move for class action certification after limited discovery.

---

[1] *See generally*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

**BACKGROUND**

Plaintiff was a server at the Steakhouse between 2021 and 2023. He claims—individually and on behalf of all others similarly situated—that Defendants violated the FLSA by subjecting Steakhouse severs to improper tip pool and clock-out policies. Plaintiff now seeks to: (1) conditionally certify a FLSA collective action based on both of these allegedly improper policies; and (2) certify a Rule 23(b)(3) class action based on Defendants' alleged tip pool policy.

## I.     Factual History

The Steakhouse is a "refined dining restaurant" that operates out of one location in Clearwater, Florida. Dkt. 14 at 4. Plaintiff estimates that it employed around twenty to thirty servers and bartenders at any given time between 2021 and 2023. Dkt. 14-2 at 2. The servers worked in the Steakhouse's traditional à la carte dinning section, private event dining section, or both. *See* Dkt. 17-2 at 1; Dkt. 17-3 at 1. And, during Plaintiff's employment, all servers were allegedly subject to mandatory tip pool and check-out policies. *Id.*

The Steakhouse's tip pool and check-out policies apparently differed between the à la carte and private event areas. For instance, while servers in both areas were required to participate in a tip pool, the tip pool for the à la carte area allegedly included "scrapers." Dkt. 1-1 at 28. These employees were essentially support staff responsible for scraping food into the trash after dishes had been

cleared from dining tables.  Dkt. 14-2 at 2. Plaintiff claims that scrapers never had face to face interactions with customers and were therefore improperly included in tip pool calculations. Dkt. 1-1 at 26. Plaintiff and Defendants nevertheless disagree about when the full-time scraper position was implemented, and what other tasks non-full time scrapers were responsible for completing. *See* Dkt. 17-2 at 1.

The check-out policy also differed depending on what dining area a server was working in. According to Plaintiff, Defendants required servers in the à la carte area to run "checkout" reports at the end of each shift to determine and finalize the amount of tips owed to such servers. Dkt. 1-1 at 27. Plaintiff maintains that Defendants required him to clock out before the checkout procedure, which "typically took 10-20 minutes daily." *Id.* As a result, Plaintiff and other servers who were working at least forty hours a week allegedly missed out on overtime pay. *Id.* Defendants, however, claim that the checkout procedure typically took five minutes or less, and that there was no policy preventing servers from clocking back in during checkouts for which they had clocked out to facilitate tip pool calculations. Dkt. 17-2 at 1; Dkt. 17-3 at 1; Dkt. 17-4 and 1. In addition, Defendants contend that the checkout procedure for private events was wholly dissimilar because, "for those servers that work private events, the manager manually prints the checkout documents and servers do not clock out until they are ready to leave the [Steakhouse] at the end of their shift." Dkt. 17 at 8.

## II.      Procedural History

On October 13, 2023, Plaintiff sued Defendants in the Sixth Judicial Circuit in and for Pinellas County, Florida. Dkt. 1-1 at 2. Less than one month later, Plaintiff filed an Amended Complaint alleging five counts: Count I—minimum wage violation under Florida law; Count II—minimum wage violation under the FLSA; Count III—request for declaratory judgment concerning the legality of Defendants' policies; Count IV—overtime wage violation under the FLSA; and Count V—minimum wage violation under the FLSA and Florida law against Defendant Mr. Bullard, individually. *Id.* at 33–37. On November 9, 2023, Defendants removed the instant case to this Court. Dkt. 1 at 1. Frank Dolsak Jr. joined as an opt-in plaintiff approximately three weeks later. Dkt. 11-1 at 1.

On December 18, 2023, Plaintiff filed the instant Motion requesting conditional certification of an FLSA collective action and certification of a Rule 23(b)(3) class action. *See generally* Dkt. 14. Defendants oppose both requests. *See generally* Dkt. 17. The Court now turns to consider these issues.

## LEGAL STANDARDS

### I.      29 U.S.C. § 216(b)

The FLSA authorizes collective actions against employers by providing that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees

similarly situated." 29 U.S.C. § 216(b). Unlike in a Rule 23 class action, "[n]o employee shall be a party plaintiff to [an FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* It follows that the decision to certify an FLSA collective action, "on its own, does not create a class of plaintiffs." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). "[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." *Id.*

Courts in the Eleventh Circuit generally follow a two-tiered approach in making FLSA collective action determinations:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (internal quotations and citations omitted).

Given the foregoing, a plaintiff seeking conditional certification has the burden "to show that there is a reasonable basis for the claim that there are other similarly situated employees who desire to opt into the case." *Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197, 1201 (S.D. Fla. 2019) (internal quotations and citations omitted). The Eleventh Circuit has described this standard as "not particularly stringent," "fairly lenient," and "flexible." *Morgan*, 551 F.3d at 1261 (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1214–19 (11th Cir. 2001). Ultimately, the decision to conditionally certify an FLSA collective action is within the discretion of the district court. *Id.* at 1260.

## II.   Federal Rule of Civil Procedure 23

Rule 23 governs class action certification and begins with the threshold issue of "ascertainability." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). In analyzing this implied Rule 23 prerequisite, courts are to determine whether "the proposed class is adequately defined and clearly ascertainable" such that a district court can determine whether the Rule 23(a) factors are satisfied. *Id.* Once this much is established, the Court moves on to the express Rule 23(a) factors, which require the putative class representative to show that: (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2)

"there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a).

After the Rule 23(a) factors are satisfied, the putative class representative "must [also] demonstrate entitlement to class relief under one of the three provisions in Rule 23(b)." *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 646 (S.D. Fla. 2023). Rule 23(b)(3)—the provision at issue here—provides that class certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Supreme Court has explained that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (alteration in original). Accordingly, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question[,]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and that probing will "[f]requently . . .

entail some overlap with the merits of the plaintiff's underlying claim[,]" *Dukes*, 564 U.S. at 351. "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (internal citations and quotations omitted).

## DISCUSSION

The Court will consider Plaintiff's request for section 216(b) certification before shifting to consider certification under Rule 23.

## I.    Conditional FLSA Collective Action Certification

As noted above, a plaintiff seeking conditional certification under section 216(b) must demonstrate that "there are other employees (1) who desire to join the lawsuit and (2) who are similarly situated with respect to their job requirements and pay provisions." *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *2 (S.D. Fla. May 17, 2006) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).

Plaintiff has met his burden of establishing that there are other Steakhouse employees who desire to join this lawsuit. Courts in the Eleventh Circuit have been "mindful that 'there is no magic number requirement for the notice stage,' and that courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation." *Reyes v. Strada Servs. Inc.*, No. 8:21-CV-976-VMC-TGW, 2021 WL 4427079, *3 (M.D. Fla. Sept. 27, 2021)

8

(quoting *Ciani v. Talk of The Town Restaurants, Inc.*, No. 8:14-CV-2197-T-33-AEP, 2015 WL 226013, *2 (M.D. Fla. Jan. 16, 2015)). The key is whether the plaintiff can present some direct evidence of possible opt-in plaintiffs which raises the plaintiff's expectations beyond mere speculation. *See Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (finding that "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify notice"). In the instant case, Plaintiff has provided such evidence. Mr. Dolsak has opted into this lawsuit prior to any collective action certification notice. Dkt. 11-1 at 1. He and Plaintiff have also submitted sworn declarations that they know of others, or have spoken to others, who will want to join if notice is provided. Dkt. 14-3 at 2; Dkt. 14-2 at 2. Numerous courts have found this level of direct evidence sufficient to satisfy the first prong of conditional certification under section 216(b). *See Guerra*, 2006 WL 2290512, at *4 (granting conditional certification where the plaintiff and one-opt in plaintiff submitted declarations); *Wynder v. Applied Card Sys., Inc.*, No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (same); *Robbins-Pagel v. Puckett*, No. 6:05-CV-1582 ORL-31-DAB, 2006 WL 3393706, at *2 (M.D. Fla. Nov. 22, 2006) (finding that three affidavits alleging FLSA claims was sufficient to establish that other individuals were interested in joining).

Plaintiff has also met his burden of showing that other interested Steakhouse employees are similarly situated. It is worth reiterating that the Eleventh Circuit has "described the standard for determining similarity, at this initial stage, as 'not particularly stringent,' 'fairly lenient,' 'flexible,' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Morgan*, 551 F.3d at 1261–62 (internal citations omitted) (cleaned up). This being the case, district courts have found sufficient similarity where a group of employees at one location shared common job requirements and pay provisions. *Wynder*, 2009 WL 3255585, at *3 (finding "the putative plaintiffs . . . similar" where "they [were] allegedly non-exempt employees working at the Boca Raton office, performing similar tasks, and suffering from the same alleged payment practices"); *Brown v. Discrete Wireless, Inc.*, No. 8:14-CV-1922-T-33EAJ, 2014 WL 6607006, *2 (M.D. Fla. Nov. 19, 2014) ("For purposes of defining the 'similarly situated class' pursuant to § 216(b), Plaintiffs need only show that the defined class is comprised of representatives who are similarly situated to Plaintiffs with respect to their 'job requirements and pay provisions.'") (citations omitted)).

Plaintiff's proposed class—all servers employed by Defendants within the last five years excluding non-tipped, non-minimum wage employees—meets this low threshold of similarity. The putative class members are all tipped, minimum wage employees that work, or have worked, at the Steakhouse. Moreover,

Defendants' own employee declarations show that private event servers also serve in the à la carte dinning area where they are subject to the same minimum wage pay provisions and tip/checkout policies. *See* Dkt. 17-1 at 1; Dkt. 17-2 at 1; Dkt. 17-3 at 1; Dkt. 17-4 at 1; Dkt. 17-5 at 1; Dkt. 17-6 at 1; Dkt. 17-7 at 1.

Of course, the Court recognizes that Defendants' employee declarations provide differing accounts concerning both the time at which the full-time scraper position was implemented and the length of Defendants' clock-out procedure. But there is no requirement that Plaintiff's proposed collective be identically situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (finding that plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members.") And, Defendants' arguments against similarity strike the Court as commonality or predominance issues that are better suited for the Rule 23 context. At this time, the Court conditionally certifies an FLSA collective action with the class definition proposed by Plaintiff.[2]

---

[2] Neither party directly addresses the issue posed by Counts I, III, and the portion of Count V that relates to Florida law; namely, whether a collective action can encompass these non-FLSA claims. *See* Dkt. 1-1 at 33–37. This issue was considered by the court in *Bradford v. CVS Pharmacy, Inc.*, No. 1:12-CV-1159-TWT, 2013 WL 5587350 (N.D. Ga. Oct. 10, 2013) in relation to a declaratory judgment claim. There, the court reasoned that, because section 216(b) "expressly limits a collective action to FLSA claims described in section 216[,]" it was most prudent to follow the Sixth Circuit's non-binding precedent and find that "a collective action brought under the FLSA may not include non-FLSA claims." *Bradford*, 2013 WL 5587350, at *2–3. The Court agrees with this reasoning and, for the time being, limits the collective action scope in this case to Plaintiff's FLSA claims and any future asserted FLSA claims that fall under section 216(b). *See Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) (finding that opt-in plaintiffs need not opt-in to FLSA claims asserted after their initial consent to join the action is made). The parties may submit briefing on this issue if they so wish.

## II.     Rule 23(b)(3) Class Action Certification

As previously stated, ascertainability is an implied Rule 23 prerequisite that focuses on a plaintiff's proposed class definition. *Cherry*, 986 F.3d at 1302. A class is adequately defined and clearly ascertainable as long as it enables a district court to properly analyze whether the express Rule 23(a) factors are satisfied. *Id.* at 1303. Essentially, this means that a proposed class cannot be defined through vague or subjective criteria that make it impossible for a district court to determine who belongs to the class. *Collado v. 450 North River Drive, LLC*, No. 22-CV-23074, 2023 WL 8371030, at *3 (S.D. Fla. Dec. 4, 2023).

Plaintiff's request for class certification fails at this initial stage. Plaintiff's proposed Rule 23 class definition is "[a]ll servers who worked for Defendant[s] within the five (5) years preceding this lawsuit[,]" presumably excluding, like the in FLSA collective, any servers who were non-tipped, non-minimum wage employees. Dkt. 14 at 1, 13. This class definition is impermissibly vague and indefinite for a simple reason; namely, Plaintiff fails to identify whether the term 'servers' "include[s] only waiters and waitresses or if bartenders are included in the class as well." *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *2 (M.D. Fla. Jan. 14, 2015). While this may strike one as an insignificant problem, it creates significant issues for the Court's analysis of numerosity and commonality. Indeed, Plaintiff's only evidence concerning

12

numerosity are his and Mr. Dolsak's declarations which state that the "Steakhouse typically had approximately twenty-thirty (20-30) servers and bartenders on the roster at one time who were subject to the same payroll practices as [us]." Dkt. 14-2 at 2; Dkt. 14-3 at 2. The Court cannot make numerosity inferences based on these numbers without knowing whether bartenders are included in Plaintiff's proposed class or what percentage of these employees were servers. *See Dukes*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties[.]"); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1278 (S.D. Fla. 2012) (finding the plaintiff's proposed class definition "vague, indefinite, and overbroad" where it failed "to distinguish between tipped and non-tipped employees").[3] Additionally, because a Rule 23 commonality finding does not follow from the lenient standards applicable to a notice-stage section 216(b) finding, the Court is also unable to determine commonality without knowing whether Plaintiff intends to represent Steakhouse bartenders. At the very least, Plaintiff must clarify this point.

---

[3] Numerosity "has been described as a 'low hurdle' for the class proponent." *Collado*, 2023 WL 8371030, at *4 (quoting *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013)). That said, "a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (emphasis in original). And "mere allegations of numerosity are insufficient to satisfy" Rule 23(a)(1). *Id.*

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Plaintiff's Motion (Dkt. 14) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

(2) The Court certifies a collective FLSA action as to Counts II and IV.

(3) The Court declines to certify a Rule 23 class action.

(4) Within twenty-one (21) days of the entry of this Order, the parties are to submit a joint motion with a proposed collective notice and means of dissemination.

**DONE AND ORDERED** at Tampa, Florida, on March 12, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record