## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALI SEGHROUCHNI, on
behalf of himself and others
similarly situated,**

           **CASE NO.: 8:23-CV-2568-WFJ-AEP**

   **Plaintiff,**

**vs.**

**BASCOM'S  STEAKHOUSE,
INC.,
and FRED B. BULLARD JR.,
individually,**

   **Defendants.**

   _____/

### JOINT MOTION OF APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

   Plaintiff, ALI SEGHROUCHNI, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators, individually and on behalf of all of the collective action opt-in plaintiffs (the "Collective Action Opt-In Plaintiffs"), and Defendants, on behalf of themselves, their agents, assigns, attorneys, heirs, successors, executors, and administrators (collectively, "Defendants") ("Plaintiff" and "Defendants" collectively referred to as the "Parties"), by and through their respective attorneys, hereby inform the Court that the Parties have reached a resolution of this matter. The Parties hereby move for approval of their Settlement Agreement and Release (the "Settlement Agreement") and request that the

1

Court order the dismissal of this case with prejudice.

## I.    THE LITIGATION

Plaintiff, Ali Seghrouchni, filed a collective and class action complaint against Defendants on October 13, 2023, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "Action"). On November 2, 2023, Plaintiff filed an amended complaint, which Defendant removed to federal court. (*See* Doc. 1).

Plaintiff alleged that Defendants unlawfully paid their servers wages below the minimum proscribed by the Florida Constitution and the FLSA. Specifically, Plaintiff alleged Defendants required servers to split tips with back of the house workers. If true, Defendants could not have properly paid its servers by the tip credit. In addition, Defendants required their servers to spend additional time at work while clocked out to input end of the shift data without paying their servers any overtime. As alleged in the Complaint, under the Florida Constitution and FLSA, Defendants are liable for repayment of the tip credit ($3.02) for each hour worked by their servers and overtime pay, plus liquidated damages.

Defendants deny the allegations of unlawful conduct and expressly deny that they underpaid servers and assert the tip pool was valid under federal and state law. In addition, servers earned service charges such that were

not subject to tip credit protections.

Following the filing of the complaint, the Parties engaged in discovery. All counsel here, Carlos Leach, Esq. for Plaintiff and Luis Santos, Esq., for Defendants, have litigated numerous collective actions involving servers' claims such as here, and were able to narrow and exchange the information and discovery needed to assess potential resolution.

The parties agreed to attend mediation in an effort to resolve the case. Over the course of several months, the Parties exchanged significant information and data between the two sides, including Defendants producing individual store data showing the individual hours worked by the back of the house employee, along with the tip out amounts to the back of the house employee, and Plaintiff providing detailed damage calculation and analysis regarding the damages claimed. After providing this information, the Parties continued to exchange further information and analysis to refine the potential collective action damages on each side.

The parties attended a full-day mediation on April 10, 2024, which was presided over by an experienced employment mediator, Attorney John Finnigan. Ultimately, the Parties agreed on a settlement in principle and began working on the numerous documents, including a detailed settlement

agreement, to document and consummate the collective action.[1] The Parties recognize and acknowledge the benefits of settling this case. Plaintiff believes that the claims asserted in this case have merit and that the evidence developed to date supports the claims. Despite the strength of his case, Plaintiff is mindful of the arguments that will be raised by Defendants' able counsel. Plaintiff further recognizes and acknowledges the expense and length of time that proceedings necessary to prosecute this matter as a collective action against Defendants, post-trial proceedings, and any appeals would take. Counsel for Plaintiff has considered the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Counsel for Plaintiff has, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiff and the potential opt-ins (hereafter defined).

Defendants maintain that they have several meritorious defenses to the claims asserted in these actions, including their defenses to the certification of the case as a collective action. Nevertheless, Defendants recognize the risks and uncertainties inherent in litigation, the significant expense associated with defending potential collective actions, the costs of any appeals, and the

---

[1] The settlement agreement has been executed by all Parties except Defendant Fred Bullard. The Parties will supplement this Motion with the fully executed settlement agreement once Mr. Bullard has the opportunity to execute the settlement agreement.

disruption to its business operations arising out of collective action litigation. Accordingly, Defendants believe that the Settlement set forth in the Agreement is likewise in its best interests.

## II.    SUMMARY OF THE SETTLEMENT

The Settlement Class Members are defined as all persons who worked for BASCOM'S STEAKHOUSE, INC. and FRED B. BULLARD JR, individually ("Defendants") at BASCOM'S STEAKHOUSE, INC. as servers at any time from 2018 to 2024. Defendants shall pay up to $285,000.00 ("Total Settlement Fund") in total aggregate payments to settle all claims for each Opt-in. Defendants acknowledge that Counsel for Plaintiff in the Action have a claim for attorneys' fees in the amount of $84,500.00, and Defendants do not challenge Plaintiff's Counsel's request for the $84,500.00 to be paid out to Plaintiff's Counsel for their costs and fees in this matter.

All Opt-ins will receive Settlement Class Member Payments, from the "Net Settlement Fund". In consideration of the releases described below, each Opt-in shall be distributed an amount equal to that Opt-in's payment. Settlement payments are to be calculated as follows:

- Each Settlement Opt-in will receive a pro rata share of the Net Settlement Fund based on their respective hours worked and tip out amounts given to the back of the house employees.

The settlement payments described above will be paid on a "claims made" basis and unpaid portions of the Net Settlement Fund shall remain the property

of Defendants. In addition, in recognition of Plaintiff and Opt-in Plaintiff Dolsak's general release, any and all claims of any kind of Plaintiff and Opt-in Plaintiff Dolsak will also be released against Defendants and related entities and persons, as described more fully in the Settlement.

The benefits of Opt-ins set forth above are commensurate with the facts of the case. Because the terms of the proposed settlement constitute a fair and reasonable settlement of Plaintiff's and the Opt-ins' claims, this Court should approve the Settlement.

### III.  THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED.

When considering the approval of a collective action, courts tend to consider several factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of [the] plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition                to                the                settlement.
>
> *Garcia v. Amazon.Com, Inc.,* 2023 U.S. Dist. LEXIS 77577, at *6 (M.D. Fla. May 1, 2023).

As such, it has also been held that "[w]hen analyzing these factors, courts should keep in mind that "[t]here is a 'strong presumption' in favor of finding a settlement fair." *Id*. As such, if a reasonable settlement is reached in a FLSA

case, district courts tend to approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

### A. The Settlement is a Fair and Reasonable Resolution.

### i.    There is No Fraud or Collusion Behind the Settlement.

Here, there is no evidence of fraud or collusion. The settlement was the result of intense adversarial arm's length negotiations that took place after detailed investigation, discovery involving the production of voluminous documentation, motion practice, and an in-person mediation in Orlando, Florida. Attorneys on both sides are experienced and specialize in wage and hour cases. Accordingly, the settlement agreement was not a product of fraud or collusion.

### ii.    Complexity, Length, and Expense of Further Litigation.

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. This case is a complex, collective action that carried significant risks for the Parties as to both legal and factual issues. The Parties agreed to settle the case in order to avoid the burden, expense, and uncertainty of litigating Plaintiffs' claims and Defendants' defenses. Continuing litigation would have required the Parties to prepare for the burden and expense and uncertainties of motions to decertify

the collective and for summary judgment.

There is also no question that litigating the case to trial would require substantial time and expenses in addition to that already expended. A trial to be conducted relating to the claims of this many potential Opt-in Plaintiffs and the defenses raised by Defendants with respect to the collective poses its own set of complexities, ranging from various legal and factual issues and proof issues, but also to coordinating testifying Opt-ins from states across the state and possibly across the country. Post-trial litigation, including appeals, would be a near certainty. It is safe to assume that trial preparation, trial and post-trial litigation would consume another year or more of effort and expense before there would be finality in this matter. Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation.

### iii.    The Stage of Proceedings

The settlement occurred over six (6) months after Plaintiff initiated the costly and time- consuming litigation, and after the Parties engaged in contentious motion practice, discovery, and exchange of voluminous documentations, as well as in-person mediation in Orlando, Florida. Specifically, Plaintiff's Counsel propounded initial discovery, filed a Motion for Conditional Certification, filed a response to Defendants' opposition to conditional certification, attended a hearing regarding the Motion for Conditional Certification, and attended the court ordered mediation. Because

the Parties were able to reach a reasonable and fair settlement resolution for the case, the Parties are now at the stage of requesting approval of the settlement by this Court.

### iv.    The Probability of Plaintiffs' Success on the Merits.

Plaintiff remains steadfast about the validity and merits of his claims. However, he acknowledges that risks remain regarding whether he ultimately would have prevailed on those claims. Those risks include defeating decertification motions, succeeding at the liability and damages phases of trial and post-trial motions and any appeals. Thus, while Plaintiff continues to believe in the viability of his claims, he agrees that considering the risks, it is in the best interest of himself, the Opt-ins, and Defendants to agree to the settlement of the claims rather than proceed with litigation.

### a.    Trial

If the Plaintiffs had defeated a motion for decertification, the risk and uncertainty associated with trial would still remain. Defendants would have argued that these witnesses cannot be representative of the experiences of the other Opt-in Plaintiffs who worked at different times during the recovery period. Additionally, Defendants would have again raised all of their defenses under the FLSA. Defendants further contend that they have witnesses, company policies, and documents, that all support the fact that Plaintiffs were properly compensated. Nonetheless, Plaintiffs would have argued that they should

prevail on the merits of their claim.

Ultimately, the Parties have removed the uncertainty of trial by resolving this matter as outlined in this Settlement Agreement.

### b.    Appeal

There was also a risk that if Plaintiffs succeeded at the trial stage, Defendants would succeed on appeal. It is likely that Defendants would have appealed any adverse decertification rulings and trial rulings, resulting in further delay.

### v.    **The Range of Recovery.**

The settlement amount of $285,000.00 is favorable and provides the collective action members significant consideration for their alleged claims. The settlement brings the Plaintiff significant monetary value, now, not years from now, and provides certainty about the outcome. Here, the Parties also disagreed with the applicable statute of limitations, as well as whether liquidated damages would be recoverable. Defendants maintained that, even if Plaintiff prevailed, Plaintiff could not meet his burden to demonstrate that Defendants' conduct was willful thereby triggering additional liability/liquidated damages. Each Plaintiff has recovered both wages and liquidated damages under the Settlement Agreement. Plaintiff and each Opt-in will receive compensation proportionate to the number of workweeks and hours each worked for Defendants, along with a portion of the tips given to back of the house

employees.

Further, the guarantee of payments within the next few months, rather than waiting for years of litigation and appeals, renders the value of this settlement even more compelling. Although the maximum possible award at trial could be larger than the settlement amount, there was a significant chance it could also be lower, or non-existent. Here, all Parties believe that the settlement amount is a reasonable and fair evaluation of the Plaintiff and the Opt-in's claims.

### vi.   **The Opinions of Counsel.**

The experience of the Parties' respective counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. The terms of the Settlement Agreement were approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. Plaintiff's Counsel had an immense amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. Also, in the view of Plaintiff's Counsel, the settlement provides substantial benefits to the Plaintiff, especially when one considers, among other things, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Because this settlement is fair, adequate, and eminently reasonable, it should be approved.

### IV.   **THE COURT SHOULD APPROVE THE NOTICE.**

The Court should approve the proposed Notice attached as Exhibit 1. It

11

has been held that "[w]hen permitting a party to send a notice concerning a collective action, a trial court "has a substantial interest in communications that are mailed for single actions involving multiple parties." *Holmes v. Swissport Fueling, Inc.*, U.S. Dist. LEXIS 210195, at *4 (M.D. Fla. Dec. 5, 2017). Further, "[b]y monitoring the preparation and distribution of a notice, "a court can ensure that it is timely, accurate, and informative." *Id.*

The proposed Notice sufficiently informs each Opt-in of the general terms of the Settlement Agreement, stating the amount allocated to the opt-in, including the settlement payment to which they are entitled, tax treatment of the award, the scope of the release, and how to retain their claims and not participate in the settlement, if he/she so chooses.

## V.    ATTORNEY'S FEES AND COSTS.

Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to an award of reasonable attorneys' fees and expenses. It has been held that

> Generally in FLSA cases when attorney's fees are negotiated separately from the plaintiff's recovery, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to the attorney.
>
> *Sommer v. Augie My Boy, LLC*, 2014 U.S. Dist. LEXIS 180739, at *7 (M.D. Fla. Dec. 29, 2014).

There are many cases within the district supporting the contention that attorneys' fees negotiated separately from Plaintiff's recovery are considered reasonable. *See Geer v. Coston Marine Servs., Inc.*, 2023 U.S. Dist. LEXIS 96429, at *4 (S.D. Fla. June 1, 2023) ("the parties represent that the attorney's fees and costs amount was negotiated separately and without regard to the amount paid to Plaintiff and I find that the requested fee amount is fair and reasonable"); *See Bell v. Healthplan Servs., Inc.*, 2024 U.S. Dist. LEXIS 81830, at *5-6 (M.D. Fla. May 6, 2024)(finding that the amount allocated towards fees was reasonable due to the fees and costs being negotiated separately); *See Lytle v. Lowe's Home Ctrs., Inc.*, 2014 U.S. Dist. LEXIS 160842, at *6-7 (M.D. Fla. Nov. 17, 2014) (finding an attorney fee award of $1,300,000.00 reasonable and no need for further analysis by the Court due to the legal fees being negotiated separately and having no effect on the settlement agreement negotiated for the class members).

Here, the attorneys' fees and costs that Defendants will pay on behalf of Plaintiff and the Opt-ins are reasonable, as the amount was negotiated separately from the amounts to be paid to Plaintiff and all Opt-ins, and the amount was in fact agreed upon without regard to the amounts paid to Plaintiff and the Opt-ins. Ultimately, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed

through protracted and costly litigation.

Plaintiff's counsel—experienced labor and employment lawyers—dedicated a substantial amount of effort, time and labor to this case. (Exhibit 2, Plaintiffs' Counsel Declaration). Since the inception of the lawsuit, the litigation has been hotly contested every step of the way. Defendant strongly disputed liability and asserted multiple defenses throughout the litigation. The parties fought very strongly, engaging in motion practice related to Conditional Certification. The Parties engaged initial discovery and shared documentation regarding damage calculations.

After incurring significant expense, the Parties attempted mediation of this case in Orlando, Florida, which resulted in resolution. The Parties separately negotiated Plaintiff's Counsel's fees and costs of $84,500.00. It has been held that in a situation where Plaintiff's recovery was reached independent of Plaintiff's Counsel's fees, then "there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009*). As such, "absent some objective basis for questioning counsel's conduct, there is simply no reason for the Court to undermine the parties' agreement." *Id.* When it has been stated by the parties that the parties of the FLSA lawsuit have negotiated attorneys' fees separately and the fees bear no impact or regard to the recovery

of the Plaintiff, "there is no reason to believe that the amount Plaintiffs agreed to accept was adversely affected by the amount of fees paid to their counsel." *Fixl v. Randall Mech., Inc.*, 2024 U.S. Dist. LEXIS 3695, at *13 (M.D. Fla. Jan. 8, 2024). Thus, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the separate payments to the Opt-ins. Rather, the attorneys' fees and costs are not above and beyond the amount to be paid to the Opt-ins and were agreed upon after determining the unpaid wages owed, such that the Opt-ins' recoveries are not reduced due to the fees and costs incurred on their behalf.

The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery in the case and the work involved in negotiating and effectuating the settlement. As outlined above, the time and labor required in the prosecution of this case was substantial, considering the history of this case. Accordingly, Plaintiff's request for attorneys' fees and costs should be approved. Given the risks presented by this Lawsuit and the results obtained, the fee requested is decidedly reasonable. Based on our experience, we also expect that there will be significant future time spent by Plaintiff's Counsel in administering the claims process and the settlement and speaking with Opt-ins about the Settlement. So, the time worked in the case alone demonstrates the

reasonableness of the fee and expenses requested as part of the Settlement Agreement. Defendant does not oppose the amount of attorneys' fees and costs as set forth in the Parties' Agreement.

## VI.    CONCLUSION

The Settlement is fair and reasonable, and parties respectfully request the Court approve the Settlement Agreement and enter the requested Stipulated Judgment.

WHEREFORE, the Parties pray the Court approve the Settlement Agreement (See Settlement Agreement, attached as Exhibit 3) as requested and dismiss the case with prejudice.

Dated this 12th day of June 2024.

Respectfully submitted,

/s/ Carlos V. Leach
Carlos V. Leach
Florida Bar No. 540021
cleach@theleachfirm.com
T'Keara N. Watson
Florida Bar No. 1018265
twatson@theleachfirm.com
THE LEACH FIRM, P.A.
1560 N. Orange Ave., Suite 600
Winter Park, FL 32789
Telephone: (407) 574-4999

/s/ Luis A. Santos
Luis A. Santos
Florida Bar No. 84647
lsantos@fordharrison.com
Christopher C. Johnson
Florida Bar No. 105262
cjohnson@fordharrison.com
Melany Hernandez
Florida Bar No. 1039033
mhernandez@fordharrison.com
FORDHARRISON LLP
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
Telephone:  (813) 261-7800
Facsimile:   (813) 261-7899